## PIKE & CUMMINS vs. GALLOWAY.

It is error to permit a demurrer to the declaration to be filed, while an issue of fact of a plea in bar is standing in the record.

The defendant executed his sealed note payable "to the order of George S. Bernie, to Messrs. Byrne & Burnside:" Bernie endorsed the note to the plaintiffs: HELD, That the endorsement vested in the plaintiffs a legal right to sue upon the note.

*Writ of Error to the Circuit Court of Pulaski County.*

Hon. WILLIAM H. FEILD, Circuit Judge.

CUMMINS, for the plaintiffs. There is no difference in the form, or construction, or effect of notes and bonds made under our law. *Story Prom. Notes*, sec. 3, 4, 33, 34, 35 ; *Walker et al. vs. Johnson et al.*, 13 *Ark. Rep.* 528.

No contract is to be construed as a surrender of a legal right—as to assign contracts generally—especially as against a party who does not execute the contract. *Chit. on Con.* 663, &c.

Naming the *usee* in a bill does not affect the legal title, but simply operates as notice of the equity to first indorsee. *Chit. on Bills* 199, 200.

CURRAN & GALLAGHER, contra. Plaintiffs do not show a complete title in themselves to the instrument sued on. *Block vs. Walker,* 2 *Ark.* 4; *Buckner vs. Greenwood,* 1 *Eng.* 206.

Byrne & Burnside were the legal owners of the note, and not George S. Bernie, the assignor. 1 *Chit. Pl.* 7; *Potter vs. Yale College,* 8 *Cow.* 60; *Bogert vs. DeBussey,* 6 *John. Rep.* 94; *Hershy et al. vs. Hichox,* 7 *Eng.* 125.

Mr. Justice SCOTT delivered the opinion of the Court.

This was an action of debt upon an instrument of writing, a copy of which, together with the endorsement under which the plaintiffs made title, is as follows, *to wit :*

"$237 50.

FORT WASHITA, CHICKASAW NATION, }<br>February 5th, 1848.     }

Eleven months after date, I promise to pay, to the order of George S. Bernie, to Messrs. Byrne & Burnside, Chartre street, New Orleans, two hundred and thirty seven dollars and fifty cents, value received, without defalcation, as witness my hand and seal.

R. L. GALLOWAY." [SEAL.]

Endorsed :

"Pay to Messrs. Pike & Cummins, of Little Rock.

GEORGE S. BERNIE."

The declaration was in the usual form, setting out the writing obligatory and the assignment, and making profert of each. At the return term, oyer was craved, and copies, as we have set them out, were accepted as a sufficient grant thereof. Whereupon, the defendant entered his plea of payment, and the plaintiffs joined issue; and, on motion, the court ordered that both parties have leave to take depositions to be read conditionally upon the trial, and continued the cause.

At the next following term, no order appearing to allow a withdrawal of the plea, the defendant filed a demurrer to the declaration, assigning for cause:

1st. That plaintiffs failed to show a legal title to the instrument sued on. The legal title is in *Byrne & Burnside.* Plaintiffs' assignor had no right to assign.

2d. The declaration shows no cause of action.

3d. That the instrument given on oyer, varies from the one described in the declaration.

The plaintiffs joining in the demurrer, upon argument, the court sustained it, and the plaintiffs declining to proceed farther, final judgment was rendered for the defendant, and the plaintiffs brought error.

No question has been made by counsel, as to the irregularity of allowing the demurrer to be filed after the plea of payment and issue thereon, and when that was still standing in the record; and none as to the alleged variance. It is only the questions raised on the other two assignments in the demurrer, that are insisted upon in this court. To solve them, we must necessarily interpret the contract between the parties.

From the face of the instrument, it seems manifest, that Bernie and Galloway were the original contracting parties. The consideration of their contract has not been questioned, and its sufficiency must, therefore, be taken for granted. It is alleged, that they contracted within this jurisdiction; and, therefore, they must be taken to have contracted with reference to our laws. The same is to be said of the contract of assignment between Bernie, and Pike & Cummins.

By these laws, in analogy to the law merchant, its rules respecting the rights and remedies of the makers, endorsers, and holders of bills, notes, and writings obligatory, indiscriminately, when for the payment of money absolutely; the manner of making the assignment and its effect, and the mode of presentment and notice, have been, by the current of our decisions, enforced. See the cases cited to this effect, in *Worthington vs. Curd,* 15 *Ark. Rep.* 504. By one of these rules, when a note is made payable, "to the order of A," it is valid, and in contemplation of law, is payable to A, while he remains holder. *Story on Prom. Notes, p. 40, sec. 36, and authorities there cited.* By another one of these rules, he may, by his endorsement upon the note, thus making his order, transfer his right to receive the money to another person, to whom, in that case, in contemplation of law, the maker's promise is as emphatic to pay the money to the endorsee, as it was before the endorsement, to pay it to the payee himself. By another rule, it is solely at the payee's election, with which the maker has no concern, whether he will retain the note himself, or pass it to another person. All these rules are to promote the negotiability of the paper, and to facilitate the payee in passing it off like currency in the course of trade. And there are other rules, all tending the same way, like that which construes any equivalent words in a note, as " *assigns,* " to mean "*order,*" or "bearer," as the case may be, in favor of negotiability. *Story on Prom. Notes, p.* 47, *sec,* 44. Until such a note shall have been passed off, the right to receive the money, and the consequent right of action, upon its non-payment, remains with the payee. Afterwards, both are in the indorsee, who stands in the shoes of the payee.

In the sealed note before us, on which we are to determine the questions raised by the demurrer, when the words "to Messrs. Byrne & Burnside" are left out, we have a perfect instrument, about which no question could arise. If, when considered as it is, and Bernie had indorsed it to Byrne & Burnside, the rights, either of the maker, or of the indorsees, would, in no respect,

have been different, had the words "to Messrs. Byrne and Burn-side" been left out; because, in the general undertaking, "to pay to the order of George S. Bernie," the maker had, in contemplation of law, obliged himself to pay to whomsoever Bernie might indorse the note; and had, therefore, already embraced Byrne & Burnside, if they should have happened to become the indorsees.

The only matter of difficulty then, is, in determining whether or not the special undertaking to pay Byrne and Burnside, upon the condition that the payee should indorse the note to them, should be held to be an inhibition upon Bernie, to indorse it to any one else.

The negotiability of notes, as we have seen, is to be favored. In contemplation of law the maker had no concern with this. He is supposed to owe the money, else he would not have given his note for it; and, therefore, it is a matter of no consequence to him, to whom he pays it. And hence, no presumption arises that he is injured, whether the note remains in the hands of the payee, or is passed off by him. Any construction, therefore, of the phraseology of a note in favor of its negotiability, cannot be supposed to injure the maker, and any construction against it cannot be supposed to benefit him. Until the contrary, then, should expressly appear upon the face of the note, any thing therein, which might relate to its negotiability, ought to be taken to have been inserted for the benefit of the payee. This is what the law does, when it construes "assigns" to be equivalent to "order." With this understanding of the law, what figure do the words "to Byrne & Burnside" cut in the note before us? Just none at all, in our opinion, since it can have no effect to enhance the negotiability of the note, and cannot be supposed to have been designed to restrict it, otherwise than by vague inference, having no foundation to rest upon in any thing upon the face of the note going to repel the presumption, that the payee alone was interested in its negotiable qualities.

There is another point of view in which this note may be regarded, in which the legal result in this case will be the same.

That is to say, it is probable, from its face, that the money, which the maker promised to pay to the order of Bernie, was for the use and benefit of Byrne & Burnside. In that case Bernie was, in contemplation of law, a trustee for that firm; and, in that capacity contracted with the maker for their use. In this view, Bernie's endorsement was sufficient for the plaintiffs to sustain their declaration; because, "in the case of a note payable, or indorsed to a trustee for the use of a third person, the trustee alone is competent to convey the legal title to the note, by a transfer or indorsement." *Story on Prom. Notes, chap. 4, p.* 130, *sec.* 125, *and authorities cited in note* 3.

The consequence is, that we think the plaintiffs showed, by their declaration and the note and assignment exhibited on oyer, not only a title to sue, but ample cause of action. Hence, the court below, in our opinion, not only erred in suffering the demurrer to be filed, while an issue of fact, on a plea in bar, was standing in the record, but in sustaining the demurrer for the causes assigned. The judgment rendered, will, therefore, be reversed, and the cause remanded, to be proceeded with according to law, and not inconsistent with this opinion.